# Illinois Official Reports

## Appellate Court

---

*Nourse v. City of Chicago*, 2017 IL App (1st) 160664

---

| | |
|---|---|
| Appellate Court Caption | RUDY NOURSE and LAUREN NOURSE, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee (Fred Carter, Defendant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-0664 |
| Filed | March 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-2620; the Hon. Eileen Mary Brewer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Goldberg Weisman Cairo, of Chicago (Lawrence T. Ruder and Kirsten M. Dunne, of counsel), for appellants.<br><br>Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Carl Newman, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Rudy Nourse, an apprentice elevator serviceman, and his spouse, Lauren Nourse, brought this personal injury action against defendants, City of Chicago (City) and Fred Carter, an elevator inspector employed by the City's Bureau of Elevators (Bureau). Plaintiffs alleged that Rudy was injured as a result of Mr. Carter's wrongful acts, or his failures to act, in his role as an inspector for the City. The suit was dismissed, with prejudice, on the ground that it was barred by sections 2-105 and 2-207 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-105, 2-207 (West 2014)), which provide certain protections to public entities from liability relating to inspections. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On March 13, 2015, Rudy and Lauren Nourse filed a complaint against the City and Mr. Carter. According to the complaint, on March 20, 2014, Rudy and his supervisor, while employed by Suburban Elevator Company, were working as "elevator servicemen" at the River North Apartments (the building) in Chicago. Mr. Carter, in his capacity as an inspector with the Bureau, was "performing an inspection of the elevators" at the building. "[A]t all times," Mr. Carter was allegedly "carrying out his responsibilities for [the City's] Bureau of Elevators." Mr. Carter "ordered" Rudy to enter the pit of an elevator shaft "prior to inspection and testing of said elevator's pit switch and without first advising [his supervisor] who was going to be operating the elevator during the course of said testing." Rudy entered the elevator pit, and his supervisor caused the elevator to descend and strike Rudy, causing injuries. The three count complaint included willful and wanton and negligence claims by Rudy against defendants and a derivative claim against defendants by Lauren for loss of consortium.

¶ 4    After the suit was commenced, Mr. Carter died on May 27, 2015. The City spread his death of record on August 25, 2015. The record contains no indication that an estate was opened, and plaintiffs did not move to substitute the estate or appoint a special administrator pursuant to section 2-1008(b) of the Code of Civil Procedure (Code). 735 ILCS 5/2-1008(b) (West 2014).

¶ 5    On July 26, 2015, the City brought a combined motion to dismiss under section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2014). The City sought dismissal of the entire complaint, in part, pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), arguing that the action was barred by sections 2-105 and 2-207 of the Act. In the briefs filed with respect to this motion, the City maintained that the statutory immunity provisions applied because Rudy claimed in response to the motion to dismiss that he was injured as a result of the improperly performed inspection of an elevator, and that his injuries were the " 'result of a [City] inspector's specific conduct during the course of the inspection.' "

¶ 6    On September 29, 2015, the circuit court granted the City's motion to dismiss, without prejudice, and granted plaintiffs leave to file an amended complaint.

¶ 7    Plaintiffs filed an amended complaint containing the same counts on October 28, 2015. In the amended complaint, plaintiffs contended that on the day of the incident he and his supervisor were at the building "performing elevator modernization" and Mr. Carter, an "elevator inspector" working for the City, was there "in the course and scope of his employment" with the City. "[P]rior to *** [Mr.] Carter performing any inspection of the

elevators *** he ordered [Rudy] to climb into *** an elevator pit." Plaintiffs asserted that this order "was unrelated to and not part of any inspection [Mr. Carter] intended to perform subsequent to giving the order to [Rudy]." In accord with Mr. Carter's order, Rudy climbed down into the elevator pit and his supervisor, "without knowledge that [Rudy] was in the elevator shaft, powered up an elevator installed in the same shaft, at which time said elevator descended into the shaft striking [Rudy]." Rudy was allegedly injured as a result.

¶ 8 Rudy alleged that Mr. Carter's conduct was willful and wanton in that he had "[d]eliberately and with knowledge disregarded and countermanded" the instruction of Rudy's supervisor that Rudy not go into the elevator pit during testing of the elevator's pit switch; "ordered [Rudy] to enter and remain in the elevator pit during testing of the elevator's pit switch"; did not inform Rudy that the elevator could be activated by another worker; and "failed to ensure [the] pit was safe and clear during testing of the elevator's pit switch."

¶ 9 In his negligence count, Rudy alleged that Mr. Carter had carelessly and negligently failed to tell Rudy's supervisor that Mr. Carter had told Rudy to get into the elevator pit and remain there "during the testing of the elevator's pit switch"; "ensure [the elevator] pit was safe and clear during testing of the elevator's pit switch when [Mr. Carter] knew that the elevator would be activated during the course of testing of the pit switch"; or inform Rudy that the elevator would be activated during testing. It was further alleged that Mr. Carter "disregarded and countermanded previous instructions *** from [Rudy's] supervisor to stay clear of the elevator pit during testing of the pit switch" and "was otherwise careless and negligent in the performance of elevator inspection duties and responsibilities."

¶ 10 On November 16, 2015, the City filed a combined section 2-619.1 motion to dismiss the amended complaint. Pursuant to section 2-619(a)(9) of the Code, the City again sought dismissal of the suit, in its entirety, as being barred by sections 2-105 and 2-207 of the Act, because plaintiffs were claiming Rudy was injured during the course of an inspection. In response, plaintiffs argued that the City's motion to dismiss was misguided because the amended complaint included allegations that "[Mr.] Carter had not yet begun his inspection" when he ordered Rudy to enter the pit. Plaintiffs also disputed the City's contention that sections 2-105 and 2-207 applied to their suit because Rudy had not been injured by any defect in the elevator but rather by the negligent or willful and wanton acts of Mr. Carter "that coincidentally occurred when he went to the [building]." The City replied by noting that the amended complaint alleged that Rudy was injured during a test of the elevator pit switch and that Mr. Carter was at the building in the course of his employment as an elevator inspector. The City asserted that these allegations demonstrated that the acts of Mr. Carter at issue were completed during and for the purpose of conducting an elevator inspection.

¶ 11 On February 10, 2016, the circuit court, after a hearing, dismissed the amended complaint, in its entirety and with prejudice, after finding that the action was barred by sections 2-105 and 2-207 of the Act. In so finding, the circuit court primarily relied on this court's decision in *Hess v. Flores*, 408 Ill. App. 3d 631 (2011). Plaintiffs timely appealed.

¶ 12                                                    II. ANALYSIS

¶ 13 On appeal, plaintiffs contend that their amended complaint was improperly dismissed with prejudice. While plaintiffs raise a number of issues on appeal, we find a discussion of the applicability of sections 2-105 and 2-207 of the Act to be dispositive.

¶ 14    A section 2-619 motion admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the action. 735 ILCS 5/2-619 (West 2014); *Jenkins v. Concorde Acceptance Corp.*, 345 Ill. App. 3d 669, 674 (2003). When deciding a section 2-619 motion, a court accepts all well-pled facts in the complaint as true and will grant the motion when it appears no set of facts can be proved which would allow the plaintiff to recover. *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 11. Thus, a court must construe the pleadings and supporting documents in favor of the nonmoving party. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21 (citing *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)). However, the court will not admit as true unsupported conclusions of law or conclusory allegations of fact. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 20.

¶ 15    Our review of an order granting a section 2-619 motion is *de novo*. *Wilson*, 2013 IL App (5th) 120337, ¶ 11. The circuit court's judgment may, therefore, be affirmed for any reason, and upon any ground warranted. *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 404 (2011). In addition, issues involving the interpretation of the Act are also reviewed *de novo*. *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 489 (2001) (citing *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 386 (1998)).

¶ 16    "A municipality's assertion that it is immune from suit is an appropriate subject of a motion under section 2-619." *American Family Mutual Insurance Co. v. Tyler*, 2016 IL App (1st) 153502, ¶ 9 (citing *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008), and *Brooks v. Daley*, 2015 IL App (1st) 140392, ¶ 14). To obtain a dismissal on the grounds of immunity, the affirmative defense "must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials." *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997) (citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)). Once the defendant meets this initial burden, "the burden then shifts to the plaintiff, who must establish that the affirmative defense asserted either is 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Id.* (quoting *Kedzie*, 156 Ill. 2d at 116). The plaintiff may meet this shifted burden by presenting " 'affidavits or other proof.' " *Id.* (quoting 735 ILCS 5/2-619(c) (West 1992)). " 'If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry the shifted burden of going forward, the motion may be granted and the cause of action dismissed.' " *Id.* (quoting *Kedzie*, 156 Ill. 2d at 116).

¶ 17    The Act serves " 'to protect local public entities and public employees from liability resulting from the operation of government.' " *Hess*, 408 Ill. App. 3d at 646 (quoting *Ware v. City of Chicago*, 375 Ill. App. 3d 574, 577-78 (2007)). As with any statutory construction issue, "[w]hen interpreting a provision of the [Act], 'our primary goal is to ascertain and give effect to the intention of the legislature.' " *Id.* (quoting *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388 (1996)). "When an immunity provision 'is clear and unambiguous, we are not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express.' " *Id.* (quoting *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006)).

¶ 18    Section 2-105 of the Act provides:

"A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any

- 4 -

enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2014).

¶ 19    Section 2-207 contains the same protections for employees of public entities, stating:

"A public employee is not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing him, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-207 (West 2014).

This court has held that these provisions provide blanket immunity, for public entities and their employees, against both negligent and wilful and wanton conduct. *Hess*, 408 Ill. App. 3d at 646 ("where a statutory immunity provision unambiguously does not contain an exception for willful and wanton conduct, the courts should not read such an exception into the provision"); *Ware*, 375 Ill. App. 3d at 583.

¶ 20    Here the City moved to dismiss the suit, in part, on the ground that it was immune from liability under sections 2-105 and 2-207 of the Act. Based on the allegations in the amended complaint, the City argued that plaintiffs were seeking to hold the City liable for Mr. Carter's conduct during his inspection of the elevators at the building. The City did not submit evidentiary proof in support of its motion below.[1] Therefore, we must determine whether, based on the face of the amended complaint, the action was properly dismissed based on the asserted affirmative defense of immunity under the Act.

¶ 21    The amended complaint alleged that Mr. Carter was present at the building and on duty as an inspector with the Bureau when Rudy was injured. Mr. Carter was present at the building to inspect and test the elevator's pit switch. Plaintiffs maintain that Mr. Carter, in his role as an inspector for the City, ordered Rudy to enter the elevator pit and that Rudy was injured when his supervisor lowered the elevator into the pit during the testing. Sections 2-105 and 2-207 would thus appear to clearly protect the City from suit for Mr. Carter's conduct during the inspection of the elevators.

¶ 22    Nevertheless, plaintiffs argued below that the amended complaint alleged that Mr. Carter's order, which directed Rudy to enter the pit, was made prior to and was unrelated to the inspection of the elevators and, therefore, the immunity provisions have no relevance to their action. Plaintiffs have not made this argument on appeal and, therefore the argument is forfeited. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 55. Furthermore, the allegations of the amended complaint supporting such a contention are conclusory and unsupported by specific facts, and plaintiffs did not thereafter provide any evidentiary support for these allegations when responding to the motion to dismiss. A court considering a section 2-619 motion does not accept conclusions of law or fact that are not supported by allegations of fact. *Kedzie*, 156 Ill. 2d at 127.

¶ 23    Instead, on appeal, plaintiffs argue that it is not enough that the acts of Mr. Carter occurred in connection with an "inspection" for the City to be immune from suit under sections 2-105

---

[1]In the appendix to its appellee's brief, the City attached documents in support of its arguments that were not presented before the circuit court and were therefore not included in the record on appeal. We will not consider those documents in our review. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 55 (2001) (documents not submitted to the circuit court and not properly a part of the record on appeal cannot be considered on appeal).

and 2-207. According to plaintiffs, for the immunity provisions to apply, a plaintiff must have been injured by a specific condition on the property that violated applicable code provisions, but was not detected or corrected as part of an inspection process. We disagree.

¶ 24        The plain language of sections 2-105 and 2-207 does not limit the immunities provided therein to only occasions where an injury occurs as the result of a defect on the premises that was not corrected or discovered due to an inadequate or negligent inspection or a failure to inspect. As we indicated above, "where the language of the immunity is clear and unambiguous, we may not read into it exceptions, limitations or conditions not expressly described by the plain language of the immunity." *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 197 (2010) (citing *Ware*, 375 Ill. App. 3d at 581-82).

¶ 25        We certainly agree with plaintiffs that the cases cited by the City, including the *Hess* decision upon which the circuit court primarily relied, involved injuries caused by hazardous conditions on the property. However, these cases do not *require* sections 2-105 and 2-207 to be interpreted such that a public entity is immune for wrongful conduct during an inspection only where an unsafe condition on the premises was a cause of the alleged injury. Again, such an interpretation would be contrary to the plain language of sections 2-105 and 2-207, as those provisions do not explicitly contain such a limitation. Moreover, interpreting sections 2-105 and 2-207 in such a manner simply because prior cases involved fact patterns somewhat different from the one presented here would run afoul of the notion that "courts are not authorized to make exceptions to the Act that would nevertheless permit the imposition of liability" and "[i]n instances where the Act applies, a court may not negate immunity by applying a judicially created rule." *First Midwest Trust Co. v. Britton*, 322 Ill. App. 3d 922, 931-32 (2001).

¶ 26        Further, the *Hess* decision itself serves to support our conclusion that the inspection immunities apply to bar plaintiffs' action. The plaintiff in *Hess* was injured when she fell from a second-floor staircase at a building that had been subject to multiple inspections by the City, which in turn had resulted in judicial proceedings for code violations. During the inspections, the City had found the building's staircase to be dangerous and hazardous, and the owner and manager of the building began repairs to the staircase. Subsequent inspections by the City showed that the repairs were not being completed in a proper manner. The plaintiff fell where a portion of the handrail had been removed and replaced with yellow caution tape during the course of repairs. The plaintiff alleged that the City acted in a wilful and wanton manner by failing to adequately inspect the building, failing to properly train its inspectors, engaging in a practice of hiring unqualified inspectors, failing to block access to or remove the hazardous conditions of the staircase, failing to inform the judge who was hearing the code violation suit of the dangers of the staircase, and requiring the owner to place yellow caution tape on the porch in place of the handrail. *Hess*, 408 Ill. App. 3d at 632-33.

¶ 27        This court affirmed the order of the circuit court granting summary judgment for the City on the basis that sections 2-105 and 2-207 applied to each of the wrongful acts of the City relating to the inspection. We explained that "all of plaintiff's assertions of wrongdoing were allegedly committed by City *inspectors* while at the *** building for the purposes of conducting *inspections* *** [and] we do not believe that the legislature was required to delineate every conceivable act that is a part of the inspection process and specifically immunize each one." (Emphasis in original.) *Id.* at 649 (citing *Rascher v. City of Champaign*, 262 Ill. App. 3d 592, 596 (1994)).

- 6 -

¶ 28    Similarly, plaintiffs here seek to impose liability on the City for Mr. Carter's wrongful conduct while present at the building for an inspection of the elevators. Once again, we conclude that the legislature was not required to delineate within the immunity provisions contained in sections 2-105 and 2-207 every conceivable act which may be involved in the inspection process.

¶ 29    In sum, sections 2-105 and 2-207 specifically provide protections relating to inspections undertaken by a public entity and its employees. It would be inconsistent with these protections if public entities and employees were subject to liability for their conduct in achieving and carrying out such inspections. It would also be inconsistent with the overall purpose of the Act, which is " 'to protect local public entities and public employees from liability resulting from the operation of government.' " *Hess*, 408 Ill. App. 3d at 646 (quoting *Ware*, 375 Ill. App. 3d at 577-78).

¶ 30    Finally, we note that plaintiffs also argue on appeal that, for the immunities provided in sections 2-105 and 2-207 to apply, the inspection at issue must involve a determination of whether a property "complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2014); 745 ILCS 10/2-207 (West 2014). Plaintiffs assert that the amended complaint demonstrates only that Mr. Carter was at the building for an inspection, but does not contain allegations about the nature of that inspection. Thus, plaintiffs contend that the City did not meet its burden of showing that the immunities applied to bar their suit.

¶ 31    In response, the City maintains that this argument was not presented to the circuit court and, therefore, it is forfeited. See *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, ¶ 24 (any arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal). However, because our review of the dismissal entered in this matter is *de novo*, and the initial burden was on the City to show that the immunities provided in sections 2-105 and 2-207 served as an affirmative defense, we will consider this argument.

¶ 32    The amended complaint specifically alleged that Mr. Carter was employed by the Bureau to conduct inspections of elevators and that he was present at the building in that capacity. Mr. Carter was also present at the building while repair or modernization of the elevators was being completed by Rudy and his supervisor. At the time plaintiff was injured, Mr. Carter was conducting a test of the elevator pit switch. These allegations, on their face, support the City's contention that Mr. Carter's inspection, which included testing a particular part of an elevator, was being done to determine whether the elevator system at the building presented a violation or posed a safety hazard to those persons who would be using or maintaining the elevators. The City thus met its initial burden of establishing that the immunity provisions of sections 2-105 and 2-207 applied.

¶ 33    In response, plaintiffs presented no evidentiary support to refute a conclusion that Mr. Carter's inspection was done for the purpose of determining whether the elevators posed a safety hazard. With plaintiffs having failed to carry the shifted burden of going forward, the City's motion was properly granted and the cause of action was properly dismissed. *Epstein*, 178 Ill. 2d at 383. We therefore conclude that the circuit court properly found that sections 2-105 and 2-207 of the Act protected the City from liability and affirm the dismissal of plaintiffs' amended complaint, in its entirety, and with prejudice.

¶ 34 In so ruling, we note again that Mr. Carter died on May 27, 2015, the City spread his death of record on August 25, 2015, the record contains no indication that an estate was opened, and plaintiffs did not move to substitute an estate as a defendant or appoint a special administrator pursuant to section 2-1008(b) of the Code. 735 ILCS 5/2-1008(b) (West 2014). Nevertheless, while the motion to dismiss was brought solely on behalf of the City, the motion itself sought dismissal of the entire complaint and specifically asserted the protections for governmental employees contained in section 2-207. In its oral ruling, the circuit court made it clear that, in addition to dismissing the claims against the City, it also found that section 2-207 also barred any possible claims against the remaining named defendant, Mr. Carter.

¶ 35 To the extent that there is any possible doubt as to the status of plaintiffs' claims against the by-then deceased Mr. Carter at the time the circuit court dismissed this matter in its entirety, we note again that the circuit court's dismissal order may be affirmed for any reason, and upon any ground warranted. *Drexler*, 408 Ill. App. 3d at 404. Section 2-1008(b) of the Code specifically provides that "[i]f a motion to substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party." 735 ILCS 5/2-1008(b) (West 2014). On appeal, this court is permitted by Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) to "enter any judgment and make any order that ought to have been given or made." Plaintiffs' failure to attempt to substitute a proper party below thus provides an alternative basis to affirm the dismissal of their claims against Mr. Carter.

¶ 36                                    III. CONCLUSION
¶ 37 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 38 Affirmed.