2022 IL App (1st) 210291
Opinion filed: March 24, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-0291

| | | |
|---|---|---|
| VICKY WILLIAMS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2019 L 007529 |
| | ) | |
| THE MIRACLE CENTER, INC.; FRAZIER | ) | |
| PREPARATORY ACADEMY; and THE BOARD | ) | |
| OF EDUCATION OF THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | Honorable |
| (Frazier Preparatory Academy and the Board of | ) | Christopher E. Lawler, |
| Education of the City of Chicago, Defendants-Appellees). | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Lampkin and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    This case arises out of an incident on August 20, 2018, in which plaintiff, Vicky Williams, slipped and fell on a puddle of water leaking from a defective water cooler inside a commercial building owned by the Miracle Center, Inc., and being occupied by Frazier Preparatory Academy (Frazier) for a school event. Plaintiff brought a three-count, second amended complaint sounding in negligence against the Miracle Center (count I), Frazier (count II), and the Board of Education of the City of Chicago (Board) (count III). Frazier and the Board (collectively, Frazier defendants) each filed a combined section 2-619.1 motion to dismiss (735 ILCS 5/2-619.1 (West 2020)) counts II and III against them, respectively, pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code). The Frazier defendants argued in their section 2-615 motions that plaintiff failed to plead that they owed her a duty of care; they argued in their section 2-619 motions that both counts were premised on their alleged negligence in failing to properly inspect the water cooler

prior to its use but that they were immune under section 2-105 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-105 (West 2020)). Section 2-105 provides:

"A local public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than its own, to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." *Id.*

¶ 2 The circuit court denied the Frazier defendants' section 2-615 motions but granted the section 2-619 motions to dismiss counts II and III based on the immunity provided in section 2-105. Count I against the Miracle Center was not dismissed. The circuit court subsequently entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding that there was no just reason to delay enforcement or appeal of the dismissal of counts II and III against the Frazier defendants.

¶ 3 On appeal from the dismissal order, plaintiff argues that section 2-105 tort immunity is inapplicable to the negligence allegations against the Frazier defendants. We reverse and remand for further proceedings.

¶ 4 On August 20, 2019, plaintiff filed a three-count, first amended complaint against the Miracle Center and the Frazier defendants. Plaintiff alleged that the Miracle Center owned, controlled, and maintained a commercial building at 2311 North Pulaski Road in Chicago. Frazier was a charter school under the Board. On August 20, 2018, plaintiff was lawfully on the premises as a business invitee, having been invited by the Frazier defendants to provide catering services there for a school event.

¶ 5    Count I was directed against the Miracle Center and alleged that it owed plaintiff a duty to exercise ordinary care by controlling and maintaining its premises in a reasonably safe condition for her and for all other persons of the general public lawfully on the premises and "further not to create or allow any dangerous conditions to exist on or about the premises." Despite its duty, the Miracle Center committed the following negligent acts and/or omissions:

"(a) created a dangerous condition inside the building by providing a defective beverage stand which leaked water as the ice melted, creating a puddle of water in which Plaintiff slipped and fell;

(b) failed to provide a safe premise for Plaintiff to perform her work;

(c) failed to inspect the premises to be certain that it was in good, safe, and proper condition;

(d) failed to warn the Plaintiff and the others of the unsafe, defective, and dangerous condition of the floor and/or beverage stand;

(e) failed to inspect and maintain the beverage stand when Defendant knew or in the exercise of ordinary care should have known that said inspection and maintenance was necessary to prevent injury;

(f) otherwise failed to reasonably maintain entrance/exit staircase, creating an unreasonable risk of injury."

¶ 6    Counts II (against Frazier) and III (against the Board) alleged that they each controlled and maintained the premises as part of an event held by Frazier and that each of them owed her a duty to exercise ordinary care by controlling and maintaining the premises in a reasonably safe condition for plaintiff and for all other persons of the general public lawfully on the premises, and not to create or allow any dangerous conditions to exist on or about the premises. Plaintiff further

alleged in counts II and III that, despite their duty, each of the Frazier defendants committed the same negligent acts and omissions as set forth in count I against the Miracle Center.

¶ 7    Plaintiff subsequently testified in a discovery deposition that she was hired by Frazier to provide lunchtime catering for an in-service meeting of teachers at the premises on August 20, 2018. Plaintiff arrived around 11 a.m. and began setting up in a conference room. As plaintiff was carrying a tray of fruit to a table in the center of the room, she slipped and fell, injuring her left shoulder. After falling, she noticed a puddle of water on the floor and determined that she had slipped on the water.

¶ 8    Plaintiff testified that there was a water cooler to the left side of the table, near the puddle, which contained bottled water and sodas as well as melted ice. Water was dripping from the cooler. Plaintiff opined that the water she had slipped on came from the cooler because "there was nothing else in the area other than that."

¶ 9    Plaintiff testified that the owner of the Miracle Center, Mary Santana, spoke with plaintiff after her fall and told her that there had been a party at the premises on the previous night and that she had been made aware that the water cooler had a hole in it and was leaking. Santana apologized to plaintiff.

¶ 10   Plaintiff tendered a request for production to the Miracle Center, which produced a transcribed statement from Santana in which she said that plaintiff was hired as a caterer by Frazier for an employee development event at the premises on August 20, 2018. Plaintiff arrived at the premises and was walking in the first-floor conference room when she slipped and fell on a puddle of water. Santana stated that "the water had leaked out" from a water cooler located in the southeast corner of the room. The water cooler was owned by the Miracle Center and "was left in the conference room from a prior event and was simply sitting in the corner of the room at the time of

the incident." Water and ice "would periodically leak out of the cooler so they had placed a large black hefty garbage bag inside the cooler" to try and stop the leaking. The garbage bag was in the cooler at the time of the incident.

¶ 11    Felicia Williams, the director of operations for Frazier, provided a sworn affidavit stating that Frazier is a charter school that held an "event" at the premises on August 20, 2018. Frazier did not own, operate, control, or maintain the premises. Plaintiff was not an employee or agent of Frazier.

¶ 12    Emily Abarca, the manager of operations for the Board, provided a sworn affidavit stating that the Board did not own or operate the premises and that plaintiff was not an employee or agent of the Board.

¶ 13    On September 29, 2020, the trial court entered an order *sua sponte* striking plaintiff's first amended complaint without prejudice and instructed her to file a second amended complaint clarifying which of the defendants owned, controlled, or maintained the premises.

¶ 14    On October 1, 2020, plaintiff filed her three-count, second amended complaint. Count I was directed against the Miracle Center and alleged that it owned, managed, controlled, and maintained the premises and owed plaintiff a duty to exercise ordinary care by controlling and maintaining its premises in a reasonably safe condition for her and, further, not to create or allow any dangerous conditions to exist on the premises. Despite its duty, the Miracle Center committed the following negligent acts and/or omissions that proximately caused her to fall and injure herself on August 20, 2018:

> "(a) created a dangerous condition on the premises by providing a defective water cooler to Defendants Frazier and Board of Education, which leaked and created a puddle of water in which Plaintiff slipped and fell;

(b) failed to provide a safe premises for Plaintiff Vicky Williams to work;

(c) failed to inspect the premises to ensure that it was in good, safe, and proper condition for people lawfully on the premises, including Plaintiff Vicky Williams;

(d) failed to warn Defendants Frazier and Board of Education of the defective condition of the water cooler;

(e) failed to inspect and/or maintain the water cooler to ensure that it was in proper working order;

(f) failed to secure or remove the water cooler when they knew it was defective and that the premises were going to be used by Defendant Frazier."

¶ 15    Count II (against Frazier) and count III (against the Board) alleged that they each controlled and maintained the premises as part of an event held on the premises by Frazier and that they each owed plaintiff a duty to exercise ordinary care in controlling and maintaining the premises so as not to create or allow any dangerous conditions. Despite their duty, each of the Frazier defendants committed the following negligent acts, which caused plaintiff to fall and injure herself on August 20, 2018:

"(a) created a dangerous condition on the premises by using a defective water cooler which leaked and created the puddle of water in which Plaintiff Vicky Williams slipped and fell;

(b) failed to provide a safe premises for Plaintiff Vicky Williams to work;

(c) failed to ensure that the water cooler was in good and safe working order before using it, thereby creating the puddle of water in which Plaintiff Vicky Williams fell;

(d) failed to warn the Plaintiff Vicky Williams of the unsafe, defective, and dangerous condition of the floor and/or water cooler;

(e) failed to use the water cooler in a safe manner, thereby creating the puddle of water in which Plaintiff Vicky Williams fell;

(f) failed to use the water cooler for its intended use, thereby creating the puddle of water in which Plaintiff Vicky Williams fell."

¶ 16    The Frazier defendants each filed a combined section 2-619.1 motion to dismiss, respectively, counts II and III against them pursuant to sections 2-615 and 2-619 of the Code. With respect to the section 2-615 motions, the Frazier defendants each argued that, despite the court's explicit instructions to amend the first amended complaint so as to plead particular allegations regarding which of the defendants owned, maintained, or controlled the premises, plaintiff had failed to do so. Instead, as in the first amended complaint, plaintiff alleged in the second amended complaint that the Miracle Center owned, managed, controlled, and maintained the premises and that each of the Frazier defendants simultaneously also controlled and maintained it. The Frazier defendants argued that plaintiff's allegations that they each owed her a duty of care based on their control and maintenance of the premises was "vague" and "conclusive" and as such failed to state a cause of action for negligence against them.

¶ 17    With respect to the section 2-619 motions, the Frazier defendants argued that all of plaintiff's allegations of negligence against them were premised on their underlying failure to properly inspect the Miracle Center's water cooler to determine whether it constituted a hazard to plaintiff's health or safety. They argued for immunity under section 2-105 of the Tort Immunity Act, which provides that a local public entity[1] is not liable for injury caused by its failure to make

---

[1]Frazier argued that it is a local public entity pursuant to the Charter Schools Law (105 ILCS 5/27A-5(a), (g)(3)(West 2020)) (defining a charter school as a "public, nonsectarian, nonreligious, non-home based, and non-profit school [that is] organized and operated as a nonprofit corporation or other discrete, legal, nonprofit entity" and which is "not exempt from" the Tort Immunity Act; see also *Danzig v.*

No. 1-21-0291

an adequate inspection of any property other than its own to determine whether it constitutes a hazard to health or safety. See 745 ILCS 10/2-105 (West 2020).

¶ 18    On January 13, 2021, the trial court entered an order denying the section 2-615 motions to dismiss, stating:

> "Taking all well pleaded facts as true, Counts II and III plead Frazier and the Board hosted an event at the Miracle Center. Despite [plaintiff] not alleging that Frazier or the Board rented or leased the venue under a contractual or other agreement, the record is sufficient for the Court to infer that [the Frazier defendants] controlled the premises so as to give rise to a duty of care."

¶ 19    The court further stated:

> "Taking all well pleaded facts as true: [plaintiff] pleads that Frazier, and thus the Board, hosted an event at the Miracle Center. During the event, [both of the Frazier defendants] allegedly controlled and maintained the premises which included a water cooler. The water cooler leaked and created a puddle on the floor that [plaintiff] later encountered. The encounter caused [plaintiff] to fall and suffer the injuries for which she now seeks to recover. At this stage, such suffices to state claims for negligence against both Defendants."

¶ 20    In the same January 13, 2021, order, the trial court granted the section 2-619 motions to dismiss. The court found that all the allegations of negligence against the Frazier defendants in counts II and III were premised on their underlying failure to inspect the Miracle Center's water

---

*University of Chicago Charter School Corp.*, 2019 IL App (1st) 182187, ¶ 4 (holding that a charter school is a local public entity for purposes of the Tort Immunity Act)). The Board argues that it is a local public entity because the Tort Immunity Act's definition of "local public entity" expressly includes school boards (see 745 ILCS 10/1-206 (West 2020)).

cooler but that they were local public entities and that section 2-105 of the Tort Immunity Act immunized them for the failure to conduct a proper inspection.

¶ 21    On January 22, 2021, plaintiff filed a motion to reconsider the dismissal order, arguing that the immunity provided in section 2-105 does not apply because none of the allegations in counts II and III of the second amended complaint are premised on the Frazier defendants' failure to inspect the water cooler; rather, the Frazier defendants are alleged to have created the dangerous condition (the puddle of water) by their use of the defective water cooler. Plaintiff argued in the motion to reconsider that, as the allegations in counts II and III of the second amended complaint center on the Frazier defendants' use of the property and not on their inspection of the property, section 2-105 is inapplicable here.

¶ 22    On February 1, 2021, the trial court entered an order amending the dismissal order to include a Rule 304(a) finding allowing for an interlocutory appeal. The February 1 order stated in pertinent part:

"3. Pursuant to this Order, Defendants, Frazier Preparatory Academy and Board of Education of the City of Chicago's, Motions to Dismiss pursuant to 735 ILCS 5/2-615 are DENIED.

4. Pursuant to this Order, Defendants, Frazier Preparatory Academy and Board of Education of the City of Chicago's, Motions to Dismiss pursuant to 735 ILCS 5/2-619 are GRANTED.

5. This Honorable Court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both of Defendants, Frazier Preparatory Academy and Board of Education of the City of Chicago's, dismissal pursuant to Illinois Supreme Court Rule 304(a)."

No. 1-21-0291

¶ 23    On March 2, 2021, the trial court denied plaintiff's motion to reconsider the dismissal order. On March 17, 2021, plaintiff filed her Rule 304(a) appeal.

¶ 24    Initially, the Frazier defendants argue that we lack jurisdiction to consider plaintiff's Rule 304(a) appeal because she filed it 44 days after the February 1, 2021, dismissal order, rendering it untimely. We disagree.

¶ 25    Rule 304(a) states:

"The time for filing a notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 26    Rule 303 states:

"The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order ***." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 27    In the present case, the trial court entered the initial dismissal order on January 13, 2021, and plaintiff timely filed a postjudgment motion to reconsider on January 22, 2021. The trial court subsequently entered an amended dismissal order with the concomitant Rule 304(a) finding on February 1, 2021. However, the time for filing the notice of appeal did not start on February 1, 2021, because plaintiff's timely filed postjudgment motion directed against the dismissal order had not yet been disposed of by the trial court. The trial court disposed of the postjudgment motion on March 2, 2021, which triggered the 30-day period for filing her notice of appeal. Plaintiff timely

- 10 -

filed her notice of appeal on March 17, 2021, within 30 days of the entry of the order disposing of the postjudgment motion. Accordingly, we possess jurisdiction to consider plaintiff's appeal.

¶ 28 Plaintiff argues on appeal that the trial court erred by granting the Frazier defendants' section 2-619 motion to dismiss counts II and III of her second amended complaint based on section 2-105 of the Tort Immunity Act. Neither party argues the propriety of the denial of the section 2-615 motion or of the court's finding that plaintiff had properly pleaded a duty of care owed to her by each of the Frazier defendants. Accordingly, we limit our analysis to a consideration of the section 2-619 dismissal order.

¶ 29 A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the cause of action. *Nourse v. City of Chicago*, 2017 IL App (1st) 160664, ¶ 14. When deciding the section 2-619 motion, the court accepts all well-pleaded facts in the complaint as true and will grant the motion when no set of facts can be proved that would allow plaintiff to recover. *Id.* Thus, the court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20. Our review of an order granting a section 2-619 motion to dismiss is *de novo*. *Id.*

¶ 30 The Tort Immunity Act protects local public entities and public employees from liability arising from the operations of government. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). In enacting this law, the legislature adopted the general principle that local governmental units are liable in tort on the same basis as private tortfeasors but limited this liability with an extensive list of immunities based on specific government functions. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996). The Tort Immunity Act does not create new duties on a governmental

unit. *Id.* Rather, it codifies the duties that existed at common law, to which the subsequently delineated immunities apply. *Id.* The immunities established in the Tort Immunity Act are affirmative matters, and so local public entities bear the burden of proving their immunity. *Van Meter*, 207 Ill. 2d at 370. Because the Tort Immunity Act was enacted in derogation of the common law, it must be strictly construed against the public entity seeking immunity. *Id.* at 368.

¶ 31    Plaintiff's argument on appeal is that the trial court erred in dismissing counts II and III against the Frazier defendants based on the court's construction of section 2-105 as conferring a "blanket immunity" for a local public entity against any allegation of liability based on its negligent inspection of any type of property that it does not own.[2] Plaintiff contends that the court failed to properly consider that section 2-105 only immunizes the local public entity for its negligent performance of a particular type of inspection, specifically, an inspection "to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2020). Plaintiff asserts that "[t]his section only makes sense if the intent was to immunize those governmental units whose function it is to perform inspections—like building inspectors, elevator inspectors, restaurant inspectors and the like."

¶ 32    Plaintiff further argues that a survey of cases applying section 2-105 of the Tort Immunity Act shows that it has only been used to immunize governmental units whose official function is to perform health and safety inspections of properties. In support, plaintiff cites *Nourse*, 2017 IL App (1st) 160664, *Ware v. City of Chicago*, 375 Ill. App. 3d 574 (2007), and *Hess v. Flores*, 408 Ill. App. 3d 631 (2011). In *Nourse*, an apprentice elevator serviceman brought a personal injury action

---

[2] Plaintiff does not contend on appeal that the court erred in finding that the Frazier defendants are local public entities for purposes of the Tort Immunity Act. Nor does plaintiff contend on appeal that the court erred in finding that all the allegations of negligence contained in counts II and III against the Frazier defendants were premised on their underlying failure to inspect the water cooler prior to its use.

against the City of Chicago (City) and an elevator inspector employed by the City's bureau of elevators, alleging that he was injured as a result of the elevator inspector's wrongful acts, or his failures to act, in his role as an inspector for the City. *Nourse*, 2017 IL App (1st) 160664, ¶ 1. In pertinent part, the suit was dismissed with prejudice under section 2-105. *Id.* We affirmed, finding that section 2-105 specifically immunized the City for the elevator inspector's conduct during the inspection. *Id.* ¶¶ 18-38.

¶ 33    In *Ware*, plaintiffs were injured when the back porch of a third-floor apartment in Lincoln Park collapsed. *Ware*, 375 Ill. App. 3d at 575-76. Plaintiffs filed suit against the City, alleging that its acts or omissions regarding inspection of the subject porch for building code violations constituted willful and wanton misconduct. *Id.* at 576. The circuit court denied the City's motion to dismiss and, in pertinent part, certified the question of whether plaintiffs' claims were barred by section 2-105 of the Tort Immunity Act. *Id.* at 575. We answered the question in the affirmative and reversed the denial of the City's motion to dismiss, holding that section 2-105 immunizes the City for allegations of willful and wanton misconduct arising out of its inspection of the porch. *Id.* at 582-83.

¶ 34    In *Hess*, plaintiff fell from the second-floor, rear staircase of an apartment building in Chicago. *Hess*, 408 Ill. App. 3d at 632. Prior to her fall, the rear staircases and porches had been the subject of multiple inspections by the City's department of buildings and judicial proceedings relating to building code violations. *Id.* Plaintiff sued the City for allegedly willful and wanton conduct on the part of its building inspectors. *Id.* The trial court granted summary judgment for the City. *Id.* We affirmed, finding in pertinent part that section 2-105 granted the City immunity for the allegations of willful and wanton conduct arising out of the building department's inspections of the rear staircases and porches. *Id.* at 645-49.

¶ 35    Unlike in *Nourse*, *Ware*, and *Hess*, the Frazier defendants are not governmental inspectors whose official function is to inspect properties other than their own to determine whether they constitute a health or safety hazard or violate any enactment. Rather than being such governmental health and safety inspectors, the Frazier defendants are a charter school and school board who were conducting a school event at the Miracle Center and whose use of the Miracle Center's water cooler during the event allegedly created the puddle that caused plaintiff to slip and fall. Plaintiff contends that, on these facts, section 2-105 immunity is inapplicable.

¶ 36    The Frazier defendants respond that the trial court properly read section 2-105 as it is written and that nothing in the language of the statute (or in any of the cases cited by plaintiff) limits the application of section 2-105 immunity to only those public entities whose function is to conduct official or formal health and safety inspections of properties other than their own. Nor does the Tort Immunity Act's definition of "local public entity," contained in section 1-206, limit it to such health and safety inspectors; rather, the definition of "local public entity" expressly includes school boards and school districts. See 745 ILCS 10/1-206 (West 2020). The Frazier defendants also point out that section 2-207, which contains the same protections for employees of local public entities as those contained in section 2-105, states:

> "A public employee is not liable for an injury caused by his failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, other than that of the local public entity employing him, for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." *Id.* § 2-207.

¶ 37    The Frazier defendants argue that section 2-207 tracks the language of section 2-105 and contains no express statement limiting its protection to only those public employees specifically

- 14 -

charged with the function of conducting official health and safety inspections of properties. They further argue that the legislative intent, as expressed by the language used in sections 2-105 and 2-207, clearly shows that the legislature intended to immunize *all* local public entities for any negligence in failing to properly conduct a health and safety inspection on any property other than their own prior to using it, even if those entities were not specifically charged with the function of conducting such an inspection. Under the Frazier defendants' construction of section 2-105, they are immune from any negligence in failing to inspect the Miracle Center's water cooler prior to using it at the school event and creating the puddle of water upon which plaintiff fell and injured herself.

¶ 38    When interpreting the Tort Immunity Act, our primary goal is to give effect to the intent of the legislature, which is best indicated by the language used in the Act. *Hess*, 408 Ill. App. 3d at 646. To accomplish this goal, we consider the entire statute, giving the words used their plain and ordinary meanings. *Shannon Court Condominium Ass'n v. Armada Express, Inc.*, 2020 IL App (1st) 192341, ¶ 12. The statutory language must be viewed as a whole, such that each section of the statute is examined in relation to every other section. *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 185 (1992). We must not depart from the plain language of the Tort Immunity Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. See *Barnett*, 171 Ill. 2d at 389. However, where the statutory language is ambiguous, we may turn to extrinsic aids of statutory construction including legislative history and consideration of the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 13; *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004). When considering legislative intent, we must presume that the legislature did not intend an absurd, inconvenient or unjust result, and we select an interpretation of the statute that

leads to a logical result and avoids an absurd one. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 53. Issues involving interpretation of the Tort Immunity Act are reviewed *de novo*. *Nourse*, 2017 IL App (1st) 160664, ¶ 15.

¶ 39    Applying these principles to the case at bar, we begin by considering the express language of section 2-105, which states that a local public entity is immunized for failing to make an inspection, or making a negligent inspection, of any property other than its own "to determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." 745 ILCS 10/2-105 (West 2020). The question unanswered by the statutory language is whether the local public entity so immunized must be tasked with the official function of conducting such a health and safety inspection of the property or whether the immunity for the failure to conduct a proper health and safety inspection applies to *any* local public entity (such as the Frazier defendants here), even where its official function has nothing to do with conducting such inspections. On the one hand, the Frazier defendants argue that section 2-105 does not contain any language specifically limiting the immunity provided therein to only those local public entities charged with the official function of conducting health and safety inspections of any properties other than their own; on the other hand, plaintiff argues that the last clause in section 2-105 limiting the immunity to a very specific type of inspection (*i.e.*, an inspection to determine whether any property other than its own complies with or violates any enactment or contains a health or safety hazard) effectively clarifies that the immunity applies only to those local public entities whose official function, training, and expertise is to perform such specific health and safety inspections.

¶ 40    "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses, thus warranting the consideration of other sources to ascertain the legislative intent." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 18

(1996). We find section 2-105 to be ambiguous, as it is capable of being understood by reasonably well-informed persons in two different senses: either as immunizing from tort liability only those public entities whose official *function* or *purpose* is to perform health and safety inspections of any properties other than their own or as more expansively immunizing all local public entities for any tort liability arising out of a negligent inspection of any property other than their own prior to its use, even if their official function was not to perform such an inspection.

¶ 41    Given this ambiguity in section 2-105 regarding the scope of its coverage, we may consider the historical and legislative background of the Tort Immunity Act, which gives insight into the reason and necessity of the law, the evils sought to be remedied, and the purpose to be achieved (while keeping in mind that the Act is to be strictly construed against the local public entity seeking immunity). Such a review of the historical and legislative background reveals that traditionally, under the doctrine of sovereign immunity, a governmental unit in Illinois was immune from tort liability. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 190 (1997). The doctrine originated in the common-law principle that "the King can do no wrong" and "the more logical and practical principle that there can be no legal right against the authority that makes the law on which the right depends." *Id.* However, the Illinois Supreme Court abolished the doctrine of sovereign immunity in 1959 (*Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959)). In response to *Molitor*, the legislature enacted the Tort Immunity Act, which adopted the general principle that local public entities are liable in tort but limited this liability with "an extensive list of immunities based on specific government functions." *Barnett*, 171 Ill. 2d at 386. By protecting local public entities in their performance of specific government functions, the legislature sought to preserve public funds for their intended purpose, instead of using those funds to pay damages on tort claims. *Harris v. Thompson*, 2012 IL 112525, ¶ 17.

- 17 -

¶ 42    With this historical and legislative underpinning of the Tort Immunity Act in mind, we must consider which specific government function the legislature sought to immunize under section 2-105, which is best indicated by the statutory language. Our review of the statutory language of section 2-105 reveals that it immunizes those local public entities whose function is to inspect any property other than its own to "determine whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety," for example, those entities performing the elevator and building inspections at issue in *Nourse*, *Ware*, and *Hess*. By contrast, the Frazier defendants are a charter school and a school board whose function is to provide educational services. At the time of plaintiff's injury, they were conducting an in-service teacher's meeting and were not tasked with the function of inspecting the Miracle Center's water cooler. As such, the Frazier defendants are not immune from liability under section 2-105.

¶ 43    Another rule of statutory construction is to view the statute as a whole so as to read section 2-105 harmoniously and consistently with every other section of the Tort Immunity Act. *Colella v. Lombard Park District*, 2017 IL App (2d) 160847, ¶ 39. Review of the entirety of the Tort Immunity Act reveals that (consistent with its historical underpinnings), immunities are directed toward public entities and their employees who perform certain specified government functions. See, *e.g.*, 745 ILCS 10/2-104 (West 2020) (providing tort immunity for the local public entity whose function is to issue, deny, suspend, or revoke any permit, license, or similar authorization); *id.* § 3-106 (immunizing the local public entity whose function is to provide recreational property). Consistent with the entirety of the Tort Immunity Act, then, we read section 2-105 as directing its immunity only toward the local public entities tasked with performing the specific government function described therein, *i.e.*, those entities whose function is to conduct formal health and safety inspections of any properties other than their own as opposed to a charter school and local school

board whose function is to perform educational services. Our holding leads to a logical result in which the Frazier defendants are not immunized for their alleged negligence that was unrelated to their intended purpose or function.

¶ 44 During oral argument held on this case, the Frazier defendants argued that *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, compels a different result. In *Choice*, students from Lawndale High School were attending a leadership program at a camp operated and maintained by the YMCA of McHenry County (YMCA). *Id.* ¶ 1. Early one morning, 16 of the students snuck out of the dormitory to ride paddleboats on the nearby Fox River. *Id.* Three of the students drowned and their estates brought a wrongful death suit against Lawndale High School, the YMCA, the Board of Education of the City of Chicago (Board), and Visionquest Association, which allegedly designed and conducted the leadership retreat. *Id.* ¶¶ 1-2.The Lawndale High School and the Board filed motions to dismiss claiming they were fully immunized under section 3-110 of the Tort Immunity Act (745 ILCS 10/3-110 (West 2008)), which states: "Neither a local public entity nor a public employee is liable for any injury occurring on, in, or adjacent to any waterway, lake, pond, river or stream not owned, supervised, maintained, operated, managed or controlled by the local public entity." The trial court granted the motions to dismiss and entered a Rule 304(a) finding that there was no just reason to delay enforcement or appeal. *Choice*, 2012 IL App (1st) 102877, ¶ 4.

¶ 45 The appellants argued on appeal that section 3-110 only afforded protection from suit to riparian public entities, meaning public entities located on the bank of a river or stream, and not to landlocked public entities such as the Lawndale High School and the Board. *Id.* ¶ 39. We held that "[t]he plain language of this statute does not purport to draw any distinction based on the geographic location of the entity but, rather, on the location of the injury 'on, in, or adjacent to' a

waterway." *Id.* ¶ 40. Thus, the plain language of the statute indicated, contrary to appellants' contention, that the legislature "did not intend to deny landlocked public entities the protection afforded by section 3-110." *Id.* In the instant case, the Frazier defendants argue we should hold, similar to *Choice*, that there is no language in section 2-105 limiting its applicability to only a certain subsection of public entities but rather the immunity afforded therein is available to all local public entities, including to them.

¶ 46    *Choice* is factually inapposite, as it construed section 3-110 of the Tort Immunity Act as opposed to section 2-105, which is at issue here. Unlike section 2-105, section 3-110 clearly delineated the scope of the immunities afforded therein (specifically, immunity for injuries occurring on, in, or adjacent to a waterway) and to who they were afforded (specifically, any public entity that did not own, supervise, maintain, manage, operate, or control the waterway upon which the injury occurred). By contrast, section 2-105 is ambiguous as to which public entities are afforded the immunity provided therein for failing to conduct a proper health and safety inspection of a third party's property. Given this ambiguity, we have employed rules of statutory construction to ascertain that the legislative intent was to direct section 2-105 immunity only toward the local public entities whose *function* is to conduct formal health and safety inspections of properties other than their own. In the instant case, as the Frazier defendants were not tasked with the function of conducting a formal health and safety inspection of the water cooler at issue, they do not fall within the scope of the immunity afforded under section 2-105.

¶ 47    Accordingly, based on our *de novo* interpretation of section 2-105 which must be strictly construed against the public entity, we find that the Frazier defendants have failed to meet their burden of proving their immunity from plaintiff's claims of negligence arising out of their alleged failure to inspect the Miracle Center's water cooler prior to using it at the school function at which

plaintiff was injured. Therefore, we reverse the order dismissing counts II and III of the second amended complaint against the Frazier defendants and remand for further proceedings.

¶ 48    Reversed and remanded.

**No. 1-21-0291**

| | |
|---|---|
| **Cite as:** | *Williams v. Miracle Center, Inc.*, 2022 IL App (1st) 210291 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-007529; the Hon. Christopher E. Lawler, Judge, presiding. |
| **Attorneys for Appellant:** | John S. Eliasik, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Chad M. Castro, Joseph E. Comer, and Krista R. Frick, of Barker, Castro, Kuban & Steinback, LLC, and Joseph T. Moriarty, of Board of Education of the City of Chicago (Thomas A. Doyle, of counsel), both of Chicago, for appellees. |