2022 IL App (4th) 220340

NO. 4-22-0340

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| XOCHI, LLC, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Jo Daviess County |
| THE CITY OF GALENA, ILLINOIS, | ) | No. 21L12 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Kevin J. Ward, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Harris and Bridges[1] concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2020, Xochi, LLC (Xochi), agreed to lease a building located in Galena,

Illinois, to PC AU 4, LLC, d/b/a Verilife (Verilife) with the intended purpose of operating a

cannabis dispensary. The lease was subject to cancellation if Verilife did not obtain the required

approval to operate a cannabis dispensary from the City of Galena (Galena). In August 2020,

Verilife formally requested that Galena complete a zoning form required by the State of Illinois,

---

[1]Justice George Bridges participated in this appeal but has since retired. Our supreme court has
held that the departure of a judge prior to the filing date will not affect the validity of a decision so
long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

certifying that the building location was in compliance with local zoning restrictions for adult-use cannabis dispensaries. Galena refused to complete the form, and Verilife terminated the lease.

¶ 2        In August 2021, Xochi filed a complaint, alleging that Galena acted negligently by breaching its ministerial duty to complete the zoning form and, as a result, deprived Xochi of the pecuniary benefits of the lease with Verilife. In December 2021, Galena filed a motion to dismiss the complaint. The trial court granted that motion, finding that (1) section 2-104 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-104 (West 2020)) shielded Galena from liability and (2) Xochi failed to state a *prima facie* case for negligence.

¶ 3        Xochi appeals, arguing that the trial court erred by granting Galena's motion to dismiss because (1) Galena does not have immunity under section 2-104 of the Act and (2) Xochi stated a *prima facie* case of negligence. Because we conclude that section 2-104 of the Act shielded Galena from liability, we affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5        Xochi owns a building in Galena, Illinois, located at 216 South Commerce Street (the Xochi location). In 2019, Xochi entered into a nonbinding letter of intent with UHCC LLC, d/b/a Bridge City Collective (UHCC), to negotiate a lease of the Xochi location, where UHCC planned to operate a cannabis dispensary. UHCC applied for a special use zoning permit from Galena for this purpose, which Galena granted in February 2020. Around the same time, Galena also granted a special use zoning permit for the same purpose to Fotis Investments, LLC (Fotis), for a building located at 115 Perry Street (Perry location), less than 1500 feet from the Xochi location.

¶ 6          Under Illinois law and a municipal zoning ordinance, no cannabis dispensary may be within 1500 feet of an existing dispensary. As a result of this policy, the first of either the Xochi or Perry locations to operate a dispensary would be the only one permitted in Galena. For both Fotis and UHCC, the special use permit was conditioned upon the applicant obtaining a license to operate a cannabis dispensary from the State of Illinois (the State) pursuant to the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2020)). Both Fotis and UHCC aspired to obtain such a license through the distribution lottery, which, pursuant to section 15-5 of the Cannabis Regulation and Tax Act (*id.* § 15-5), required the Department of Financial and Professional Regulation (Department) to issue 75 licenses by May 1, 2020. UHCC's letter of intent with Xochi contained a contingency period in which UHCC could terminate the lease by April 30, 2020, if it was not granted a license in the lottery.

¶ 7          In March 2020, in response to the COVID-19 pandemic, the State postponed its cannabis license lottery to September 2020. Galena in turn voted to suspend applications and hearings on all new special use requests for cannabis sales locations until the month following the issuance of the licenses. Xochi and UHCC were unable to negotiate a lease due to the postponement of the lottery.

¶ 8          In June 2020, Xochi entered into a new lease agreement with Verilife, which also contemplated the use of the Xochi location for a cannabis dispensary. The Verilife lease also included a 180-day contingency period whereby Verilife could terminate the lease if it did not obtain all necessary approvals to operate a cannabis dispensary at the Xochi location. Verilife already possessed a cannabis license from the State, and therefore it did not need to obtain one in the lottery to open a dispensary. The only further approval necessary for Verilife to operate at the

- 3 -

Xochi location was Galena's completion of a "Notice of Proper Zoning Form" (the zoning form) to be submitted to the Department.

¶ 9　　　　The zoning form contained two sections: one to be completed by the applicant and another to be completed by an "authorized representative of the local zoning office." Section one required the applicant to check boxes 7 to 10, which collectively affirmed the applicant possessed any special use permits necessary to operate a cannabis dispensary and that its proposed location complied with state law requirements. Section two must be completed by the zoning representative and stated, "Please confirm the boxes 7 to 10 above are true and accurate under the local zoning ordinance," with spaces below for the zoning representative to provide his title, printed name, name of the jurisdiction, telephone number, and signature.

¶ 10　　　　In August 2020, Verilife submitted its request for Galena to complete the zoning form. In September 2020, the zoning administrator, Matt Oldenburg, advised Verilife that he was unable to complete the zoning form because of Galena's suspension of applications and hearings on any new special use requests for cannabis dispensaries. Neither Verilife nor Xochi responded to Oldenburg or appealed the decision.

¶ 11　　　　Following the September 2020 cannabis license lottery, Galena lifted its suspension of applications and hearings on special use requests for cannabis dispensaries. Shortly thereafter, Verilife terminated its lease with Xochi and opened a dispensary at the Perry location.

¶ 12　　　　In August 2021, Xochi filed a complaint against Galena alleging negligent breach of ministerial duty. Specifically, Xochi claimed that as a direct result of Galena's failure to complete the zoning form, Verilife terminated its lease with Xochi and deprived Xochi of the pecuniary benefits of the lease.

¶ 13    In December 2021, Galena filed a motion to dismiss Xochi's complaint, arguing (1) section 2-104 of the Act shielded it from liability and (2) Xochi failed to state a claim for negligence. Following a hearing, the trial court granted Galena's motion to dismiss, concluding the Act precluded a finding Galena was liable for negligent breach of ministerial duty and Xochi nonetheless failed to allege facts showing Galena owed Xochi any duty or caused its damages.

¶ 14    This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16    Xochi appeals, arguing that the trial court erred by granting Galena's motion to dismiss Xochi's negligence complaint because (1) Galena does not have immunity under section 2-104 of the Act and (2) Xochi stated a *prima facie* case of negligence. Because we conclude that section 2-104 of the Act shielded Galena from liability, we affirm the trial court's judgment.

¶ 17                A. The Standard of Review

¶ 18    The trial court granted Galena's motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)). "The purpose of a section 2-619 motion to dismiss *** is to dispose of issues of law and easily proven issues of fact at the outset of litigation." *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 15. Under that section, a trial court may dismiss a plaintiff's claim where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). The Illinois Supreme Court has described other affirmative matter as "some kind of defense other than a negation of the essential allegations of the plaintiff's cause of action." (Internal quotation marks omitted.) *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21 (2008). "[T]he existence of tort immunity *** is a proper affirmative matter pursuant to section 2-619(a)(9) as [it] completely defeats the plaintiff's ability to successfully prosecute its

claim against the defendant." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 33.

¶ 19 "A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint," as well as "all well-pleaded facts and all reasonable inferences therefrom." *Id.* ¶ 31. Although a section 2-619 motion admits well-pleaded allegations of fact, it does not admit conclusions of law or conclusory, unsupported factual allegations in the complaint. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16. The trial court should grant a motion to dismiss under section 2-619(a)(9) only when, construing the pleadings in the light most favorable to the plaintiff, "the plaintiff can prove no set of facts that would support a cause of action." (Internal quotation marks omitted.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. This court reviews a dismissal pursuant to section 2-619 *de novo*. *Id.*

¶ 20 B. The Local Governmental and Governmental Employees Tort Immunity Act

¶ 21 The Act protects "local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a) (West 2020).

> "The purpose of the Act is to prevent the dissipation of public funds on damage awards in tort cases. [Citation.] Unless a specific immunity provision in the Act applies, a public entity is liable in tort to the same extent as a private party. [Citation.] Since the Act is in derogation of the common law, it must be construed strictly against the public entity seeking immunity." *Monson v. City of Danville*, 2018 IL 122486, ¶ 15.

"Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act. It is only

when the governmental entities have met this burden that a plaintiff's right to recovery is barred." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003).

¶ 22        Section 2-104 of the Act provides, in relevant part, the following:

"A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-104 (West 2020).

¶ 23                    C. The Act Precludes Liability in This Case

¶ 24        Xochi argues the trial court erroneously found section 2-104 of the Act precluded Galena from liability. Specifically, Xochi asserts the Act did not apply in this case because Xochi's complaint sought liability based on Galena's refusal to acknowledge that it had *already* approved the zoning permit—not its refusal to issue a *new* zoning permit. In response, Galena argues that its refusal to complete the zoning form fell squarely within the Act's protection under the plain language of section 2-104. Because we agree with Galena that the Act provides immunity here, we need not address the merits of Xochi's second argument.

¶ 25        In *Williams v. The Miracle Center, Inc.*, 2022 IL App (1st) 210291, ¶ 38, the First District recently wrote the following:

"When interpreting the Tort Immunity Act, our primary goal is to give effect to the intent of the legislature, which is best indicated by the language used in the Act. [Citation.] To accomplish this goal, we consider the entire statute, giving the words used their plain and ordinary meanings. [Citation.] The statutory language

must be viewed as a whole, such that each section of the statute is examined in relation to every other section. [Citation.] We must not depart from the plain language of the Tort Immunity Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. [Citation.]"

¶ 26    1. *The Plain Language of Section 2-104 Confers Immunity Upon Galena*

¶ 27    Based on a plain reading of section 2-104, Galena's refusal to complete section two of the zoning form is within the scope of the activities the statute is designed to immunize. Xochi attempts to distinguish the completion of the zoning form from the activities listed in the statute by recharacterizing such completion as an "acknowledgment" that Galena had already issued it a special use zoning permit. We disagree because this is a distinction without meaning under section 2-104.

¶ 28    The Act provides immunity for any injury involving the governmental entity's "failure or refusal" to provide its "approval *** or similar authorization." An "authorization" is defined as "[o]fficial permission to do something." Black's Law Dictionary (11th ed. 2019). Construing this language strictly against Galena, we conclude Galena's failure to complete the zoning form constituted Galena's failure to provide its "official permission" for Xochi to claim that Xochi already possessed the zoning permit. Put differently, Xochi sought Galena's permission to "confirm" its representations to the Department were "true and accurate under the local zoning ordinance" pursuant to the language in the form. Section 2-104 immunizes Galena from any claimed injury resulting from its refusal to provide Xochi this permission.

¶ 29    Xochi further argues Galena was not "authorized by enactment to determine whether or not" the zoning form should be completed under the second clause of section 2-104 and therefore the statute does not preclude Galena's liability in this case. See 745 ILCS 10/2-104

- 8 -

(West 2020). Specifically, Xochi asserts completion of the form did not require any substantive decision be made—instead, the form required an acknowledgment that Galena's decision had already been made. This language, Xochi continues, "informs the construction of the term 'or similar authorization' by providing that the 'authorization' is something that can be issued, denied, suspended, or revoked—that is, an ongoing permission of some kind subject to future suspension or revocation."

¶ 30 Xochi's reading of the second clause of section 2-104 is incorrect. Xochi attempts to read into the statute a qualification that the "authorization" contemplated by the statute must involve an "ongoing permission of some kind." No such qualification exists in the statute. Although we agree with Xochi that the language of the statute necessitates that the "similar authorization" must be "something that can be issued, denied, suspended, or revoked," we disagree with its conclusion that the completion of the zoning form it sought from Galena was not something that could be "issued, denied, suspended, or revoked."

¶ 31 Galena's refusal to complete the form until after the cannabis license lottery was conducted clearly constituted a "denial" by the zoning administrator. The form Xochi requested Galena to complete specifically required completion by the "authorized local zoning representative"—in this case, zoning administrator Oldenburg. As the individual whose permission was sought to certify the accuracy of Xochi's representations to the Department, Oldenburg was necessarily "authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." *Id.*

¶ 32 Moreover, section 2-104—unlike other provisions of the Act (see *id.* §§ 2-109; 2-201)—does not distinguish between the discretionary and ministerial actions of the entity claiming immunity. See *Doyle v. City of Marengo*, 303 Ill. App. 3d 831, 833 (1999) (holding section 2-104

does not contain a distinction between discretionary and ministerial acts). As stated above, this court will "not depart from the plain language of the [Act] by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Williams*, 2022 IL App (1st) 210291, ¶ 38. Accordingly, even assuming completing the zoning form was a purely ministerial function, any claimed injury arising from Galena's failure to complete that task is nonetheless barred by the terms of section 2-104.

¶ 33          2. *The Doctrine of* Ejusdem Generis *Supports Application of Immunity*

¶ 34          Alternatively, even if the language of section 2-104 was not clear and unambiguous, we would conclude the *ejusdem generis* canon of statutory construction supports a finding that Galena's failure to complete the zoning form constitutes a "similar authorization" under the statute. See *M.U. v. Team Illinois Hockey Club, Inc.*, 2022 IL App (2d) 210568, ¶ 25 ("Where the language used is clear and unambiguous, we must apply the statute as written, without resorting to extrinsic aids of statutory construction."). "Under this interpretive canon, 'when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those "others such like" the named persons or things.' " *Id.* ¶ 28 (quoting *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994)).

¶ 35          Section 2-104 precludes liability for injuries caused by a governmental entity's "failure or refusal to issue, deny, suspend or revoke, *any permit, license, certificate, approval, order or similar authorization.*" (Emphasis added.) See 745 ILCS 10/2-104 (West 2020). Because Xochi itself characterizes Galena's action as a "failure" or "refusal" to complete the zoning form, the question is whether the completion of the form constitutes a member of the catchall class of "similar authorization[s]." *Id.* We conclude that it does.

¶ 36 Looking to the other named items' definitions, a "permit" is "a written warrant or license granted by one having authority," a "license" is "permission to act" or "a permission granted by competent authority to engage in a business or occupation or in an activity otherwise unlawful," and an "approval" is "an act or instance of approving something." Merriam-Webster's Collegiate Dictionary (10th ed. 2000). As noted earlier, Xochi sought Galena's permission to verify to the Department that it was authorized to operate a cannabis dispensary in accordance with Galena's zoning laws. Galena's refusal to provide this "permission to act" or "instance of approving something," in context, is a "similar authorization" when compared to the items enumerated in the statute. Accordingly, we conclude that act falls within the protection of section 2-104.

¶ 37 3. *Application of Section 2-104 Immunity Would Not Lead to an Absurd Result*

¶ 38 Last, we disagree with Xochi that applying section 2-104 immunity to the circumstances in this case would lead to an "absurd" result. Xochi suggests adoption of Galena's "expansive" construction of section 2-104 would immunize any refusal or failure by a government entity to respond to "request[s] for information relating to approvals already made." As Galena correctly notes, this case does not involve a simple request for information; instead, Xochi sought "an affirmative act of a public official conveying to the [Department] that a property has been authorized for use as an adult-use cannabis dispensary." By its terms, an injury resulting from a governmental entity's simple refusal to provide information would not be within the scope of section 2-104 immunity, and our holding in this case would not dictate otherwise.

¶ 39 In sum, we conclude the trial court (1) correctly determined that section 2-104 of the Act shields Galena from liability and (2) properly allowed Galena's motion to dismiss. Because

our conclusion on this issue is dispositive, we do not address whether Xochi's complaint sufficiently pleaded a claim for negligent breach of ministerial duty.

¶ 40                                              III. CONCLUSION

¶ 41          For the reasons stated, we affirm the trial court's judgment.

¶ 42          Affirmed.

*Xochi, LLC v. City of Galena*, 2022 IL App (4th) 220340

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jo Daviess County, No. 21-L-12; the Hon. Kevin J. Ward, Judge, presiding. |
| **Attorneys for Appellant:** | Matthew Boleyn, of Boleyn Law P.C., of Dubuque, Iowa, for appellant. |
| **Attorneys for Appellee:** | Michael P. Stauder and David W. Porter, of Chilton Yambert Porter LLP, of Geneva, for appellee. |