NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 4240126-U

NO. 4-24-0126

IN THE APPELLATE COURT

FILED
November 1, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CYHILA BROOKENS, as Independent Administrator of the Estate of Pierre Scott Jr., Deceased | ) ) ) ) | Appeal from the Circuit Court of Sangamon County |
| and | ) ) | |
| KRISHAWNA ACRES, as Guardian of the Estate and Person of D.D., a Minor, | ) ) ) | No. 22LA145 |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| SPRINGFIELD SCHOOL DISTRICT NO. 186, JASON WIND, DIANNE BELL, JEFF BARR, ROMONA MARTIN, KARI BORDERS, and KIMBERLY SMITH, | ) ) ) ) ) | Honorable Ryan M. Cadagin, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court reversed and remanded for further proceedings in the trial court, finding the amended complaint and other supporting documents did not contain a sufficient factual basis for an immunity finding under sections 2-201 and 2-109 of the Tort Immunity Act that would warrant dismissal; the appellate court also reversed the trial court's holding that section 4-102 of the Tort Immunity Act applied, holding that the allegations in the amended complaint did not allege that defendants failed to provide police protection services.

¶ 2    This case arises from a tragic incident involving a fatal stabbing that occurred at Lanphier High School (Lanphier) in 2021. Plaintiffs, Cyhila Brookens, as independent administrator of the estate of Pierre Scott Jr., and Krishawna Acres, as guardian of the estate of D.D., asserted wrongful death claims against defendants, Springfield School District No. 186 (School District), Jason Wind, Dianne Bell, Jeff Barr, Romona Martin, Kari Borders, and Kimberly Smith, on a theory of willful and wanton conduct and negligence. The trial court dismissed the case pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)) based on immunity under sections 2-201, 2-109, and 4-102 of the Tort Immunity Act (Act) (745 ILCS 10/1-101.1, *et seq.* (West 2020)). On appeal, plaintiffs ask us to reverse the trial court's judgment. For the reasons stated below, we reverse.

¶ 3                    I. BACKGROUND

¶ 4                    A. Factual Background

¶ 5    The following factual background is taken from plaintiffs' amended complaint. We note at the outset that plaintiffs' amended complaint contains certain errors and omissions that somewhat obscure their claims before us. For example, plaintiffs seemingly refer to Christopher Barham and Brian Caton, the assistant principals of Lanphier, as defendants when they are not named defendants in the case. Furthermore, plaintiffs failed to delineate their specific claims as to each defendant and allege specific actions taken by each defendant in relation to the alleged wrongful actions. At oral argument, plaintiffs also seemingly changed what conduct the claims in the amended complaint sought to redress. Nevertheless, we are able to surmise the following factual allegations, which we accept as true solely for purposes of this appeal. We note that this case has a related criminal appeal in the Fourth District (case no.

- 2 -

4-23-0553). The facts and analysis in this case are limited to the appeal before us and have no bearing on the result in the criminal case.

¶ 6      On November 17, 2021, while at Lanphier, a facility of the School District, K.B., a minor at the time, stabbed two fellow students: Pierre Scott Jr. and D.D., a minor. This resulted in the tragic death of Scott.

¶ 7      K.B., a special needs student with a history of bad behavior, including aggression and physical violence, had an individualized educational plan that entailed her attending alternative school programming at Douglas/PREP (Douglas), another facility in the School District. Prior to the Lanphier incident of November 17, a separate incident occurred at Douglas in which defendant Dianne Bell, a teaching assistant, encountered K.B., who possessed a knife. The other defendants were aware of this incident and also knew of an escalating feud between the children, including threats of physical violence. Nevertheless, after an unspecified period of time, K.B. was allowed to return to Lanphier for schooling in the afternoon under supervision on a daily or semidaily basis. Thus, K.B. would attend Douglas in the morning, then, by way of school transportation, she would attend Lanphier in the afternoon.

¶ 8                          B. Procedural Background

¶ 9      After plaintiffs filed their original complaint, defendants filed a motion to dismiss, which included an affidavit of defendant Jason Wind, the executive director of school support for the School District. Plaintiffs moved for leave to file an amended complaint, and the trial court granted leave. Plaintiffs then filed the amended complaint before us now. In the amended complaint, plaintiffs alleged defendants consciously and purposefully reintroduced K.B. to Lanphier without adequate supervision despite knowing of the danger she posed to the student

body. Plaintiffs lump all defendants together and allege they collectively breached their duty to the students willfully and wantonly.

¶ 10 Defendants filed a second motion to dismiss, which again included an affidavit of defendant Wind. In their motion, defendants argued that (1) the amended complaint failed to comply with section 2-603 of the Code (735 ILCS 5/2-603 (West 2022), (2) the amended complaint failed to adequately plead facts supporting a cause of action, and (3) absolute immunity under the Act—specifically sections 2-201, 2-109, and 4-102—precluded suit against defendants. See 745 ILCS 10/2-201, 2-109, 4-102 (West 2020). The trial court ruled only on the third issue, holding that defendants had absolute immunity from suit under the Act, and dismissed plaintiffs' complaint pursuant to section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2022).

¶ 11 Thereafter, plaintiffs filed a notice of appeal, and later a motion to reconsider. As part of the motion to reconsider, plaintiffs noted that defendant DiAnne Bell did not join the motion to dismiss; therefore, the order was not a final order as to all parties. We accordingly dismissed the pending appeal. Bell eventually adopted defendants' motion to dismiss. The parties submitted briefs, along with a second affidavit from Wind, and the trial court granted Bell's motion to dismiss for the reasons explained in its first order. As no further claims were pending before the court, it entered judgment in favor of all defendants.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, plaintiffs' arguments largely pertain to alleged issues with Wind's two affidavits. Plaintiffs assert the trial court should not have relied on the affidavits because they improperly refuted facts in the amended complaint, failed to comply with Illinois Supreme Court

- 4 -

Rule 191(a) (eff. Jan. 4, 2013), and offered their own facts, which conflicted with those in the amended complaint. Defendants respond to these arguments and ask us to affirm the trial court's holdings on absolute immunity under the Act.

¶ 15                                    A. Standard of Review

¶ 16        The trial court granted dismissal pursuant to section 2-619(a)(9), which provides for involuntary dismissal where a "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). Tort immunity is a proper affirmative matter under section 2-619(a)(9), as it " 'completely defeats the plaintiff's ability to successfully prosecute its claim against the defendant.' " *Xochi, LLC v. City of Galena*, 2022 IL App (4th) 220340, ¶ 18 (quoting *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 33).

¶ 17        "A motion for involuntary dismissal under section 2-619(a)(9) of the Code admits the legal sufficiency of the complaint, as well as all well-pleaded facts and all reasonable inferences therefrom." (Internal quotation marks omitted.) *Xochi*, 2022 IL App (4th) 220340, ¶ 19. "The trial court should grant a motion to dismiss under section 2-619(a)(9) only when, construing the pleadings in the light most favorable to the plaintiff, the plaintiff can prove no set of facts that would support a cause of action." (Internal quotation marks omitted.) *Id.* "This court reviews a dismissal pursuant to section 2-619 *de novo*." *Id.*

¶ 18                                    B. The Act

¶ 19        The trial court found defendants were immune from liability under the Act. The Act's purpose "is to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1 (West 2020). The Act only grants immunities and defenses. *Id.* The legislature provided immunity to local public entities "to

- 5 -

prevent the dissipation of public funds on damage awards in tort cases." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). Government entities bear the burden of proving they are immune from a claim under the Act. *Id.* at 370. The defense must be apparent on the face of the complaint or else supported by affidavits or other evidentiary materials. *Id.* at 377.

¶ 20 At issue in this case are sections 2-201, 2-109, and 4-102 of the Act. Ultimately, we hold that (1) based on the facts before us, dismissal is not warranted based on immunity pursuant to sections 2-201 and 2-109 and (2) section 4-102 does not apply to the claims as pleaded. We begin our analysis with sections 2-201 and 2-109.

¶ 21 1. *Sections 2-201 and 2-109*

¶ 22 Section 2-201 of the Act provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2020). Section 2-109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109 (West 2020). Therefore, if an employee is immune under section 2-201, then the School District is also immune.

¶ 23 Our supreme court has held that the Act sets up a two-part test to determine which employees may be granted immunity under section 2-201: first, an employee may qualify for immunity if he or she holds either a position involving the determination of policy or involving the exercise of discretion; second, an employee who satisfies the first prong must also have engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Hascall v. Williams*, 2013 IL App (4th)

121131, ¶ 23 (citing *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998) (abrogated on other grounds)).

¶ 24 The crux of plaintiffs' allegations is that defendants wrongfully allowed a student to reenter Lanphier in the afternoons after doing alternative schooling at Douglas, and that as a result, that student stabbed other children, resulting in the death of one student. The amended complaint alleges that defendants did this despite having prior knowledge that this student was dangerous. Plaintiffs allege that "[d]efendants' affirmative acts and conscious decisions to separate the student from the student body at Lanphier and then reintroduce her into that population without adequate supervision proximately caused severe bodily harm to [D.D.] and [Scott]." We note that at oral argument, plaintiffs seemingly changed the conduct, or rather lack of conduct, that would serve as the basis for their claim. They asserted that their claims were for inaction on the part of school officials in preventing the incident.

¶ 25 The legal framework for our analysis is as follows: first, we examine whether defendants hold either a position involving the determination of policy or involving the exercise of discretion; and second, we analyze whether defendants engaged in both the determination of policy and the exercise of discretion when they decided to separate the student from the student body at Lanphier and then reintroduce her into that population.

¶ 26 A policy choice is one which "require[s] the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Van Meter*, 207 Ill. 2d at 375. Discretionary acts are "unique to a particular public office." *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484-85 (2002). Discretion " 'connotes a conscious decision.' " *Monson v. City of Danville*, 2018 IL 122486, ¶ 33 (quoting *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768 (1996)).

¶ 27     The named defendants are the School District, Wind, Bell, Barr, Martin, Borders, and Smith. Wind is employed at the School District as the executive director of school support; Bell is employed at the School District as a teaching assistant; Barr is employed at the School District as a security guard; Martin is employed at the School District as a social worker; Borders is employed at the School District as a site administrator; and, Smith is employed at the School District as a guidance counselor.

¶ 28     Notably, the amended complaint does not delineate between the defendants as to which defendant made which decision or which defendant took which action. Wind's affidavits, which defendants rely upon, similarly do not indicate who made decisions or who took which actions. Wind's first affidavit speculates on what employees *would* have done and references the School District's handbook and disciplinary policies. His second affidavit recounts what some of the defendants did on a prior date when K.B. was caught with a knife when entering Douglas, then simply states:

> "Each of these six individuals held a policy making position to the extent that he or she was required to balance the competing interests in determining appropriate discipline for students and to determine what solution best serves those interests. Each also participated in the discretionary policy decision of how to respond to [K.B.'s] act of bringing the pocketknife into Douglas."

Even if we were to accept these statements, they do not relate to the alleged improper actions, nor do they add any facts relating to the individual defendants' positions or actions.

¶ 29     As such, we cannot determine whether each of the defendants held a position involving the determination of policy or involving the exercise of discretion, nor which defendants, if any, engaged in both the determination of policy and the exercise of discretion

when they decided to separate the student from the student body at Lanphier and then reintroduce her into that population. See *Roe v. Board of Education of Community High School District 99*, 2024 IL App (3d) 220377-U, ¶ 33 (not applying section 2-201 immunity where the record on appeal lacked evidence of whether policy determinations were made and what discretionary acts occurred, if there were indeed acts of discretion); see also *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 923-24 (C.D. Ill. 2009)) (not applying section 2-201 immunity on a motion to dismiss where questions remained about whether all the actions were discretionary, or whether some were ministerial, and there was no evidence about what competing interests were balanced). Where facts necessary to sustain an affirmative defense are not apparent on the face of the complaint and not supported by affidavits or other materials in the record, defendants are not entitled to dismissal. *Monson* ¶ 31 n.1.

¶ 30    For example, we cannot determine from the amended complaint or defendants' provided affidavits how and in what manner Barr, the security guard, exercised discretion or made a policy determination in relation to K.B.'s schooling at Lanphier and Douglas. The allegations in the amended complaint lump Barr in with all of the other defendants in its claims. Barr is not mentioned at all in the first affidavit, and the second affidavit only discusses Barr's actions relating to the first incident of K.B. bringing a knife to Douglas. This can be said of each defendant. While it very well might be true that the parties held positions of policy discretion and made such policy determinations, nothing provided by the parties establishes this. There is simply not enough information before us at this time to affirm dismissal pursuant to section 2-619(a)(9) on the basis of immunity under sections 2-201 and 2-109.

¶ 31                                    2. *Section 4-102*

¶ 32    Section 4-102 of the Act states:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee." 745 ILCS 10/4-102 (West 2020).

¶ 33　　　　Section 4-102 does not contain any exceptions and absolutely immunizes local public entities and their employees for both negligent and willful and wanton conduct in failing to protect or in providing inadequate police protection services. *Andrade v. City of Kankakee*, 2023 IL App (3d) 230035, ¶ 16. The plain language of section 4-102 provides that immunity for failure to prevent a crime attaches "*if police protection service is provided.*" (Emphasis in original.) *Doe ex rel. Ortega-Piron v. Chicago Board of Education*, 213 Ill. 2d 19, 25 (2004).

¶ 34　　　　In *Doe v. School District U-46*, the Northern District of Illinois federal court held that section 4-102 immunity did not apply because the plaintiff did not allege that the defendants failed to establish a police department or otherwise provide police protection service or, if police protection service was provided, failed to provide adequate police protection or service. *Doe v. School District U-46*, 557 F. Supp. 3d 860, 876 (N.D. Ill. 2021). The plaintiff brought claims against the defendants for willful and wanton misconduct for failure to ensure student safety from physical violence. *Id.* There were no allegations that a teacher or administrator functioned as police personnel by "provid[ing] services performed by police personnel such as 'weapons detection, traffic control, and crowd security and control.' " *Id.* at 876-77.

¶ 35         Many courts, including our supreme court, have found section 4-102 immunity to apply to "functions traditionally performed by police, such as weapons detection, traffic control, and crowd security and control." *Albert v. Board of Education of City of Chicago*, 2014 IL App (1st) 123544, ¶ 53 (citing *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 26 (2004)); see *Doe v. Board of Education of City of Chicago*, 611 F. Supp. 3d 516, 543 (N.D. Ill. 2020) (holding that immunity under section 4-102 did not apply because the alleged misconduct did not involve police protection services.); see also *Ortega-Piron*, 213 Ill. 2d at 27 (finding the school board was not providing 'police protection service' under section 4-102 by providing a bus attendant).

¶ 36         In *Wright-Young v. Chicago State University.*, 2019 IL App (1st) 181073, ¶ 64, the defendant school board argued that the jury was improperly allowed to base its verdict on the school board's failure to provide adequate police services. Specifically, the jury was instructed that the claims against the school board were

> "based on its failures to implement an appropriate security plan for the safety of students given the elevated risks for violence at the event, to assign or maintain posts within the arena, to keep entrances and exits clear of crowds during and immediately after the game, to prevent fans from engaging in multiple fights inside the arena and outside its entrances, and to prevent fans from exiting the arena in a disorderly manner." (Internal quotation marks omitted.) *Id*.

The appellate court agreed that these theories of liability described police protection services, all of which were afforded immunity under section 4-102. *Id.* ¶ 65. The court explicitly rejected plaintiff's theory that her allegations were more properly characterized as the failure to supervise or monitor students, activities which would not fall within section 4-102. *Id.* ¶ 67.

¶ 37    Also instructive is *Reyes v. Board of Education of the City of Chicago*, 2019 IL App (1st) 180593, ¶ 3, where a disabled student was sexually assaulted by a nondisabled student on a special needs school bus. The plaintiffs alleged that an aide assigned to the bus fell asleep during her shift and allowed the nondisabled student to "roam around the bus at will." *Id.* ¶ 10. The trial court characterized the claim as one based on a failure to provide police protection services or prevent a crime and concluded that the board was immune from liability under section 4-102. *Id.* ¶ 4. The appellate court reversed, reasoning that the attendant "was tasked with managing student behavior and physically assisting students with getting on and off the bus," and as such, her function was more akin to that of a "teacher or a hall monitor whose very presence may prevent unsafe activity or untoward behavior" than someone functioning as police personnel. *Id.* ¶ 46. In reaching its holding, the appellate court stated that it found significant the fact that the plaintiffs "did not allege anything in their complaint that indicate[d] that [the bus attendant] also provided services performed by police personnel, such as weapons detection, traffic control, and crowd security and control." *Id.* ¶ 45.

¶ 38    In *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 33, the plaintiff argued that the defendants' failure to monitor students in the bathrooms was a supervisory act with immunity under section 3-108 and not a police act receiving immunity under section 4-102. We agreed, reasoning that it would require a broad interpretation of the statute to cast a failure to supervise students in the bathroom as a failure to provide "police protection services." *Id.* ¶ 35. We ultimately analyzed the allegations in the complaint as asserting a failure to supervise students with potential immunity under section 3-108. *Id.*

¶ 39    Here, we find that the amended complaint does not allege a failure by defendants to provide police protection services. In the amended complaint, the allegations are more aptly

described as alleging a failure to supervise and monitor students. Plaintiffs admit in their briefing that they are not alleging any failure to provide security. As such, based on the amended complaint before us, we hold that section 4-102 is inapplicable.

¶ 40                                    III. CONCLUSION

¶ 41         For the reasons stated, we reverse the trial court's dismissal. To summarize, first, we cannot determine based on the record before us whether section 2-201 immunity applies to defendants' actions alleged in the amended complaint. Second, we hold that section 4-102 immunity does not apply to the claims in this case as currently pleaded in the amended complaint, as they are not accurately characterized as services performed by police. The judgment of the trial court is reversed and remanded for further proceedings not inconsistent with this order.

¶ 42         Reversed and remanded.